James Buhs v. the Secretary of the Florida Department of Corrections. Mr. Chase. Good morning. My name is Dane Chase and I'm here on behalf of the petitioner James Buhs. Mr. Buhs is a state court inmate who filed a federal habeas corpus petition in the Southern District of Florida. The central issue raised in this appeal is whether a federal court is required to defer to state court findings of fact which themselves arise from a deficient fact-finding procedure. 2254 D requires deference to a state court's findings unless the state court's findings were based on an unreasonable determination of the facts. As explained in Mr. Buhs' briefs, the Ninth Circuit has recognized that where a state court makes a finding of hearing, the fact-finding process itself is deficient and not entitled to deference. There's no precedent from our circuit on that. Not on that specific, not that I could find that specifically found that you're required to hold an evidentiary hearing to make a finding of fact. I mean I think that you could, it's implicitly found in a couple of cases including the Daniels case which I filed a supplemental authority a couple days ago but not that directly states that same point I'm aware of. But it does make sense the Ninth Circuit's holding because if a finding of fact is the result of an unreasonable fact-finding process, the fact found itself cannot be reasonably said to be reasonably determined. What facts do you think were incorrectly determined by? All of them, quite frankly. It can't be all of them. Well, there was only about three facts that were found specifically and I can go through them certainly. Let's put it this way, what are the critical facts that you think that the state court got wrong? Yes, the critical fact is that the state court is finding that Mr. Buhs was correctly or properly advised as to an affirmative defense that he had in the case which was a prescription defense to the drug trafficking offense he was charged with. Essentially what the court did was make a finding as to what Mr. Buhs was told by his trial counsel during an out-of-court conversation without any basis for making that finding. The court relied. The habeas court found specifically that Mr. Buhs had acknowledged in his motion that counsel had advised him of the prescription defense. Was that true? Was there such an acknowledgment? That is incorrect. In the state court proceedings in the motion, what he actually says is that his attorney advised him that he could raise a prescription defense in terms of the sentencing procedure. In terms of if he were to plead guilty at sentencing, he could raise this as a defense and that would somehow mitigate his case or somehow result in the dismissal of the charges at that stage, which is clearly incorrect. There is nothing in the motion itself that says that he was ever advised that he could proceed to trial and raise it as a defense at trial as an affirmative defense. I think maybe even further, counsel denied, and I understand it, this is the pre-withdrawal proceeding, correct? Correct. I think he denied ever telling Buhs that the scenario of how he came into possession of the drugs would somehow amount to a legal defense or a reason that the court will dismiss the charge of trafficking. That's correct. There's a second part to that. Is it a legal defense? I don't think it is necessarily. I think it's a question of circumstances. I mean, the prescription might go to mens rea, but it's not a legal bar to the prosecution the way it was with the other drug that was dismissed, count three I think it was, that was dismissed because of a prescription for Mr. Hughes. These were prescriptions to other people and for other people and he was storing them in a hidden compartment and he was partaking of them from time to time. It hardly bespeaks an absolute defense that he could have raised. Well, there's a couple of problems with that. Number one, it's still an affirmative defense because in Florida, if you are in possession of somebody else's prescription drugs lawfully, you're basically acting as an agent for them and so your possession is lawful. It is an affirmative defense that you could raise at trial. It is not a defense that you could raise in a pre-trial motion to dismiss successfully because it's really a jury question of finding a fact as to whether or not you're actually lawfully in possession. The other issue is that he never actually admits that he was using these keeping the drugs for, quote, keeping the drugs for or not, was deceased, correct? That's correct. The mother of a friend of his? That's correct. So it's hard to see how that was something that he was, he could just, it's not as though you were holding the drugs because somebody was visiting you and they left and forgot them. This person left permanently and he had them for years. Right, which actually, to my point, demonstrates that he actually was in lawful possession of them. If he for some reason was holding them for any kind of illegal purpose, whether he was using them or selling them or doing something other than what he said he was, which is just holding on to them, it stands to reason that over the course of five years he surely could have found a buyer or surely would have consumed them. It makes no sense whatsoever. Wasn't there some evidence that he did use them? But there is no, there is no evidence. What he says is that this bundle of prescription drugs that is found in his house, which includes prescription drugs that he actually himself has a prescription for, he uses them rarely. He doesn't identify in that statement whether he's referring to the morphine, which he's holding onto for others, or if he's referring to the prescription drugs that he actually has a prescription for. So it's ambiguous, there's not actually an admission by him that he's using the prescription drugs that are not his. Even if he did, that doesn't necessarily preclude him from raising that as a defense at trial because he could still be in lawful possession of them and using them for illegal purpose. The central issue or question is whether he came into possession and was holding them lawfully. Before I forget to bring you back to where we started about the facts that you think were wrong. The first one was that Mr. Buse was properly advised of the prescription defense and you've explained why you think that factual finding was wrong. Tell me the other two that are critical you think. Well, we were just covering them really. That he admitted to using these and that he admitted that he was advised of the defense in his post-conviction motion. So really both the . . . it's just two basic issues. Whether he was advised of the prescription defense by his lawyer and second, whether he admitted to using some of the drugs that he was holding for someone else. Yes, essentially whether or not the defense was rendered unviable or inviolable, whatever the correct word there is. Right. Let me ask you one question which I don't think the parties have addressed, but the cases in Florida which extend the so-called prescription defense to narcotics that are being held for someone else based on someone else's prescription. Those cases all post-date the events in this case. So my question is, at the time that the lawyer did what he did or didn't do what he failed to do, why was it deficient performance to think that that statute extended to Mr. Buse's situation with regard to the prescriptions of others? Right. For a couple of reasons. Number one, I believe all the cases actually in turn rely on cases that predate the charges in this case. So I think that the case law was out there. Two, I think it's just a logical conclusion that a defense attorney, if they're doing a proper investigation and legal research into the case, would come to that conclusion. I mean, nobody would look at this and think to themselves, well, the state of the law in Florida is such that if your mom hands you her prescriptions to hold onto for a day that that somehow makes you a drug trafficker. So I think that it's just something that . . . Well, the state certainly thought so when it argued against the rule in these other cases, right? It wasn't that the state gave in and said, yes, these individuals are covered by that prescription defense too. A court had to make that determination. We have cases which indicate that a lawyer is not deficient for failing to anticipate what the law is going to develop into in the future. I'm wondering how that impacts your case, if at all. Yes. I don't think that it really impacts it at all because at the end of the day, it's not like we're talking about a change in the law. This was something that was there and obvious the entire time. Again, those cases that we're relying on or that have been cited to all in turn cite to earlier cases to reach the premise that this is a lawful defense in Florida. I think that just basic research would have led an attorney to the conclusion that this was in fact a viable defense. Would you agree that it's not an absolute defense, just the fact of a prescription? That it's got to be shown that he wasn't abusing the other prescription or that he was . . . it seems to me that there was . . . I don't actually, Your Honor. It was a triable issue, it seems to me. It is a triable issue, completely a triable issue. Okay. Yes. He decided not to go that route. He had another strategy, a strategy that wouldn't go to trial because there were problems by going to trial that he testified to and said was a . . . that the government has recited, which were the fact that the other . . . the fireworks would have been introduced in evidence and he had masses of fireworks. I don't know how many, 20,000 fireworks or something, a huge number of fireworks that were of questionable legality. He had . . . he might be a bad witness himself. It would foreclose any chance for cooperation and acceptance of responsibility. He had the firearms too. And he had firearms as well. I understand that, but there's a couple of things. Number one, it still has to be a reasonable decision by the defense attorney after a reasonable investigation for him to arrive at that. We're talking about a case where he had the case for five days, didn't have discovery. Himself admits that he goes in right away and immediately this is just the plan without any thought. What do you make of the fact that there was a very short period of time between the defendant's arrest and his guilty plea or no-law plea? Right, and that's exactly what my point is. It demonstrates that there was an actual reason and consideration and investigation done by the attorney prior to his advisement on this case. And regardless . . . Well, there was also an admission by your client that there may be, because he was rushing to plead, which was his interest, he wanted to do this, so he could quickly go and cooperate, which is what he offered to do, that he may be missing certain facts. Facts might come out later that could alter the course of action in this case. But he was waiving any problems on that score. And that's essentially what happened here, isn't it? Well, yes, it is essentially what happened. But at the end of the day, he's still relying on his counsel and is entitled to rely on his counsel to give him an informed advice as to whether it makes sense to waive further development of the case, waive further development of the facts, and for him to give him a reasoned advice as to whether . . . That may be in most situations, but here your client was clamoring to cooperate and he knew he faced mandatory minimums. And the only way for a 5K1.1 letter would be cooperation to the satisfaction of the government, and he thought he could do it, and certainly his lawyer accepted what he was saying about that. But he made that decision without any knowledge that he actually had a defense that he could raise at trial. So it's not an informed decision for him to . . . But it's not like the lawyer didn't know about the prescription defense at all, because . . . It seems that he doesn't. Well, but the charge, the charge that was based on his own possession of his own narcotics that he had a prescription for, that was dismissed. It was no prost. That had to come from somebody. Somebody had to realize once Mr. Buse came up with a prescription that that charge no longer could be . . . That only demonstrates . . . . . . could be force forward. That only demonstrates that he had an awareness that a personal prescription would be a defense. It doesn't demonstrate that he had an awareness that you could be a lawful . . . holding something for somebody else that has a lawful prescription. So it doesn't show that he understood the agency aspect of it. There's just nothing in the record from the state court hearing about the prescription defense at all. Am I correct on that? Yeah, exactly. There's nothing in there other than maybe a tacit comment about that it wouldn't be a basis for getting the charge dismissed, which is true. You can't have it dismissed pretrial on that basis. It's completely a jury question. So other than that, no, there's not any kind of discussion on the record about . . . On the prejudice prong here, your client is . . . what relief is your client seeking here? Well, frankly at this point from this court, he's looking for . . . New trial? Well, ultimately, yes. At this point, though, he's looking for an evidentiary hearing so he can actually prove these claims. But yes, ultimately he is seeking to have his plea judgment sentence vacated and essentially the case sent back for a trial. That particular aspect of it, which goes to the prejudice, was ruled upon, correct? Not by the state court. The state court made absolutely no finding on that. And then what happened is the district court below . . . They tried to withdraw his plea. He did, but that's under a completely different standard. That's under the Manifest and Justice Standard. It doesn't go into a question of whether a counsel was ineffective or not. So it's under a different standard than . . . No, but it bears on the question of . . . the facts that were discussed and dealt with in that motion bear upon the question of prejudice on habeas. Not at this point because again, they weren't evaluating the question of whether he proceeds to trial if he's aware of this defense. So the prejudice analysis is on a different issue of whether or not he was advised X, Y, Z or whether his attorney misadvised him concerning his ability to have things dismiss his sentencing. So in my mind, no, it doesn't address the central issue that's raised by Mr. Buse at this point. I have another question. Sure. The magistrate judge in the R&R, which the district court adopted, did not look through the floor of the DCA's summary affirmance to the state habeas court's reasoned decision. Is that right? No, that's what they did. They looked through the DCA because the DCA didn't have an opinion. It was just procuring a firm without anything. So it was in compliance with Wilson v. Sellers? That's correct. All right, Mr. Chief. Thank you very much. We'll give you your full time for rebuttal. Ms. Germanoitz. Good morning, Your Honor. May it please the court, my name is Janine Germanoitz. I'm here today to represent the Florida Department of Corrections in this matter. And it's obviously the department's position that there's no relief that can be granted to the defendant under the facts of this case. And obviously, I don't need to remind you of the W. Deferential standard that applies here. Not only do you have to satisfy Strickland, but you also have to satisfy the AEDPA standard on top of that. You can't do it under the facts of this case. Let's start with the fact that the defense counsel, Paul Auerbach, the person who represented the trial level was a lawyer of 55 years experience, 30 of which he spent practicing criminal law exclusively. He'd been practicing criminal law in Florida since 1990, which was 19 years by the time all of this happened. Well, except the problem here is that, as your counsel, as your friend, your colleague on the other side has said, relates to whether or not counsel focused on this particular question of whether or not there was a defense based on prescription and informed the client of that, and that there was a likelihood of a prescription defense. Well, counsel . . . And secondly, that there was a question about the using. Did he use the drugs? But really apprising him of the prescription defense is the threshold question. The fact that there was no specific . . . that was something that really wasn't addressed in a hearing. There was no evidentiary hearing on that point. All he wants is to send it back for an evidentiary hearing by the district court. What's wrong with that? There's no need for an evidentiary hearing because the facts on the case are enough to refute the defendant's claims altogether, and that's the reason why there was no need for an evidentiary hearing. And the reason for that is because what we have here is the fact that a defense counsel specifically knew the history of these drugs. The appellant and defense counsel both admitted that Auerbach knew how the defendant came into possession of these drugs prior to the plea hearing. And they specifically said that he denied telling them, the defendant, that the scenario of how he came into possession of the drugs would amount to a legal defense in the sense that he would be able to dismiss the charges right then and there. We all agreed that it's not something that you could dismiss under a Florida rule of criminal procedure 3.19 or C-4 motion dismiss because the facts are disputed. So the only way you could do that is actually go to trial, and Auerbach was well aware. He knew that there were problems with that. And the reason for that, first of all, is that it was disputable regarding whether the defendant had admitted to using the drugs, and it's also disputable about the fact that the defendant supposedly was presented these drugs by legitimate prescription holders, two prescription holders, one of which was the actual prescription holder, and he said he left the drugs with the defendant in 2004. The defendant never bothered to return them to the legal prescription holder from 2004 until 2009. The second person was not even the prescription holder for the morphine. It was his deceased mother who the morphine belonged to, and obviously we would have submitted that the morphine should have been destroyed immediately upon her death and that the defendant shouldn't be holding it at all regardless. Let me ask you a question, if I could. The state agreed initially in the post-conviction proceeding that there should be an evidentiary hearing, right? That last part? In the state post-conviction proceeding, the state... In the state post-conviction proceeding, an evidentiary hearing is required unless it The question is a little bit different. In the state post-conviction hearing, excuse me, the state post-conviction proceeding, the state initially agreed that the court should hold an evidentiary hearing, right? They initially agreed, but then they took a closer look at the actual record and they say, hey, these facts don't actually support having an evidentiary hearing because based on these facts, it was enough to show the defense counsel was acting as a strategic matter deciding these facts are not strong enough for us to go to trial on these facts. I know, but the problem is, at least from my perspective, is that the only thing the state was relying on was the transcript of the hearing on the motion to withdraw the And so now you don't have anybody testifying about... There's no testimony from the lawyer about whether he thought that the prescription defense was viable with regard to third-party prescriptions. There's no testimony about whether he discussed that possibility with Mr. Buse. There's no testimony at an evidentiary hearing about what Mr. Buse, how his reaction was to that sort of advice. There's nothing. And he's asked for an evidentiary hearing twice and been denied an evidentiary hearing twice. So why shouldn't we grant one and allow the district court to flesh all this out? Because it's simply not necessary because there's enough here to show not only that the lawyer had acted as a strategic matter in deciding to deal with this, why not going to trial on this case? Because, number one, remember the defendant is very adamant about going forward with the substantial assistance agreement. You want to know why? The reason he's adamant about going forward with it is because he is facing a mandatory minimum of 15 years on the firearm charge alone, but which he had no defense whatsoever. He specifically admitted that he knowingly possessed those firearms on tape. So he's facing a mandatory minimum of 15 years right there. And then you add in the 25-year prescription morphine charge as well. And so you can see where the defendant and her client are thinking, well, if I engage in substantial assistance and if I explain the circumstances of how I came to hold this morphine to the judge at the sentencing hearing, I'm not facing a sentence of 15 years. I'm anticipating a reduced sentence of three to five years. Yes, that's very true. If that's viable and if he's been advised about the other possibility and told, here are your options. You can go to trial. We can try to assert this prescription defense. It has some problems, so you may lose. And if you lose, you're going to get the 25-year min-man on the trafficking charge. Or you can try to cooperate. Cooperation is solely in the eyes of the state. You can do all you can for the state, but if it doesn't lead to tangible results that they're happy with, they're not going to ask the judge to go below the 25-year min-man. Those are your two difficult options. Choose. And then he chooses. There's no testimony about that whatsoever. There is, I didn't find any evidence to support the state court's finding that Mr. Buse was properly advised of the prescription defense. If you think that that's, if my reading is incorrect, tell me what testimony or what document in the state court record shows that Mr. Buse was advised of the prescription defense by his lawyer. Your reading is not incorrect. He never specifically came out and specifically said, I advised him of this particular prescription defense regarding holding that. I'll let you finish in a second, but let me interrupt the thought. If that's the case, then that factual finding has been overcome. He has shown by clear and convincing evidence that there's no evidence to support that factual finding. And if that's right, that opens the gateway for a federal evidentiary hearing in district court. What? No? No. And the reason why, I'll tell you why, is because it was a fair inference from what had already been set out on the record and from the totality of the circumstances. That, in fact, he did advise him of the prescription defense, that he was aware of that prescription defense. He certainly was aware of it because he got the al-Qaeda lambshell justice marathon based on the fact that the defendant had a prescription for that. The fact that the lawyer was aware of it does not mean that he advised his client of the defense. Would you agree with that? I can't dispute that, but the inference is there because the defendant said that he specifically advised his lawyer of the facts surrounding the morphine, how he was holding it, and the lawyer told him, well, you know what, the best way to deal with this is for us to enter into substantial assistance in this plea agreement, and then I'll bring it up at the trial as part of our grounds for a downward departure. So he did at least advise the defendant of that much. Both the lawyer and the defendant agreed on that point. The other thing I want to point out is that he was trying to do something in a very short amount of time because he was arrested on July 2nd. The information was filed on July 16th. The plea hearing was held on July 21st. Obviously, the reason for all of that was because he was rushing to try to engage in the substantial legal assistance agreement, and that was the reason for the hate. The defendant specifically told the judge at the change of plea hearing, yes, I'm aware that by entering into this plea so early on in this process, I am foregoing the possibility of exploring any defenses, engaging in further discovery, and so forth. And the other point I'd like to point out real fast is that the lawyer was able to get letters from the two prescription holders at the latest by October of 2009. He had these letters in his hands, September and October of 2009. Does he move to withdraw the plea? No. He waits until after the sentencing hearing to make his argument, and then after the sentencing hearing appears seven days later, the defendant moves to withdraw his plea. And we submit to you that it's simply a case of buyer's remorse. He decided he was going to take his chance. And, you know, under the circumstances, you can't exactly, and this goes to the prejudice prong as well. Under the circumstances, you can't exactly fault the lawyer for saying, let's not go to trial. And you also can't fault the lawyer, I'm sorry, the defendant for deciding to take a plea. There is no evidence that even if the defendant had known of the prescription defense, he would have chosen to forego the opportunity to provide substantial assistance and get a greatly reduced sentence of three to five years instead of taking the opportunity to go to trial and risk a sentence where you have a mandatory minimum of 15 years on the firearm charge for which he has absolutely no defense whatsoever. So he's going to get a mandatory minimum of 15 years. I submit to you that if you have a chance of getting a three to five year sentence. But nothing stops him from taking a plea on the 15 year and fighting the 25 year because 10 years is a big thing. So he could have taken an alternative option of pleading guilty to the charge that he had no defense to and trying to beat the charge that would have given him another 10 years. That's a viable possibility too. It's a viable defense, but is it a great idea to go to trial on that? No. And the reason is because there's no guarantee that the jury would have believed him. And if he doesn't enter into the collective plea agreement, keep in mind the plea agreement and the substantial assistance agreement, that's a collective agreement, that's for all of the charges. And keep in mind also that he's foregoing the part of the entering into the plea agreement if the state attorney agrees not to refer the charges to the federal authorities for further charges. So he might be exposing himself to even more charges on the firearms. So again, you know, it was a very good plea deal from his perspective. It's just unfortunate that he wasn't actually able to provide substantial assistance. But you know, he had great hope. All right, Ms. Tremenowis, thank you very much. We appreciate it. Thank you. We would urge the court, of course, to affirm the district court and to deny any relief. Thank you very much. Thank you. Mr. Chase. There's been a lot of discussion regarding the prejudice aspect of this, but I would submit at this point it's actually premature to even be looking at prejudice. There's no prejudice that we don't have to really concern ourselves with performance. Okay, so if the facts were unreasonably determined, then what should happen or what is supposed to happen is that the federal court should be doing a de novo review. Under a de novo review, you have to accept his facts as alleged as true at this stage until there's an evidentiary hearing. So really the prejudice shouldn't even be reached until that hearing takes place and he has an opportunity to develop . . . But if you accept, going to Judge Walker's point, if you are right that if we conclude that the state court made an unreasonable determination of the facts based on the whole record and that triggers de novo review in the federal court, a federal court's not required to hold an evidentiary hearing if it accepts all of the applicant's alleged facts as true, right? If you allege facts 1 through 10 and a district court says, I adopt them all, I assume them all to be true, that's what you're going to prove at an evidentiary hearing, there's no need for a hearing. I think the question is how does Mr. Buse get to prejudice ruling, accepting all of his facts as true? Accepting all of his facts as true, then he has demonstrated prejudice because actually when you're talking about a federal advisor of a defense, the question really becomes whether it would be objectionably reasonable for the defendant to have proceeded to trial on that defense or otherwise stated rational for him to do so. Here, it would be completely rational. What did he allege or state in his federal habeas petition about that point? Yes, what was alleged or stated regarding that is the fact that he was facing a 25-year mandatory minimum on the charge versus a 30-year sentence if he proceeds to trial. He's risking a total of five years on that offense by proceeding to trial. Given the fact that he has a very minimal record, yes, he has a felony from 20 years ago, but again, that's 20 years ago. He's also a military veteran and it just doesn't seem likely that he's really risking much, if anything, by proceeding to trial because rationally speaking, going into that trial, you're aware that if you lose, at most, you're going to be tacking on another five years. That's the statutory maximum? That's the statutory maximum. Reality is the chances of the judge going above and beyond the mandatory minimum of 25 and going up to the 30 in the circumstances of his case where there is no evidence and nobody's trying to argue that he's a drug dealer or that he's distributing these narcotics is very, very slim. That's what's put in the federal petition, is that given the circumstances of the offense, even under the state's theory, it's just not reasonable or likely that the court would have done anything but give him the minimum mandatory. In fact, the sentencing court itself actually makes reference to the fact that it doesn't make the 25-year mandatory seem inappropriate in the case, which just belies the point that it would have been rational for him to take his chances of trial on the prescription defense, even if his chances were minimal, because reality is he's not really risking anything. All right, Mr. Chase, thank you. Thank you. You had another question? Actually, I do have another question. Going back to my question about Wilson versus Sellers, on page 30 of the R&R, the magistrate judge says, this court should not look through the unwritten PCA to the last reason decision, and it applies the standard from Harrington versus Richter, which is whether any arguments reasonably could have supported the denial of post-conviction relief, but the Supreme Court reversed that position subsequently. If that's legal error, what impact would that have on this case? To be perfectly honest, I don't know that it does from the perspective of, because what she ultimately does is just look at the state that she looks through, whether she says she's doing it or not. My understanding, my reading of the report and recommendation is she actually ends up looking through the PCA to the state court order so to be honest with you, I don't know that it does have an impact, but I will definitely take a look at it. I mean, as a matter of fact, to Judge Pryor's point, you're asking us to look through. I am. Because you're asking us to figure out or determine that the state court's determination of fact was unreasonable in light of the entire record. Right. So you want us to look through. I do. Take a look at what the state trial court did on post-conviction. Right, and that's the way it's been argued or at least I've been trying to argue it the whole way through. Okay. Thank you very much, Mr. Chase. We appreciate it.